**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


SUE ANN SEYMOUR, *et al.*,      )
                                      )
             Plaintiffs,      )       Civil Action No. 09-1707
                                      )
         v.                 )
                                      )
PPG INDUSTRIES, INC.      )
                                      )
            Defendant.      )

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

Presently before the court is a motion challenging the court's subject-matter jurisdiction over this collective action on the basis of mootness following the rejection by plaintiffs of a Federal Rule of Civil Procedure 68 offer of judgment. For the reasons set forth below, the motion will be denied because the court continues properly to exercise subject-matter jurisdiction over this action.


### I.    *Introduction and Procedural History*

Plaintiffs in this collective action are former employees of defendant PPG Industries, Inc. ("PPG" or "defendant"). Plaintiffs bring misclassification and retaliation claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*("FLSA"). (Second Amend. Compl. (ECF No. 110).)

Plaintiffs filed their original complaint (ECF No. 1) on December 30, 2009. They filed an amended complaint (ECF No. 9) on January 25, 2010. On May 21, 2010, the court granted

plaintiffs' motion for conditional certification (ECF No. 32) of their collective action. Plaintiffs filed a second amended complaint (ECF No 110), with leave of the court, on June 7, 2011.

On March 21, 2012, with discovery due to be completed by May 11, 2012, PPG filed a motion to dismiss for lack of jurisdiction (ECF No. 139) with a supporting brief (ECF No. 140). In response, on April 4, 2012, plaintiffs filed a motion to strike the motion to dismiss, arguing that (a) since it relied on matters outside the pleadings, the court must treat it as a summary judgment motion, and (b) the filing of the motion violated the court's explicit instruction not to file motions for summary judgment until the close of fact discovery.

During a hearing on April 24, 2012 (addressing the motion to strike and an unrelated discovery dispute), the court denied plaintiffs' motion to strike, but extended plaintiffs' time to respond to PPG's motion to dismiss until twenty days after the end of discovery. The court noted that the motion need not be converted into a motion for summary judgment, as only Federal Rule of Civil Procedure 12(b)(6) motions to dismiss relying on factual matters not referenced in the allegations of the complaint must be so converted. Although defendant believed the motion to dismiss to be authorized by Federal Rule of Civil Procedure 12(b)(1), the court could not construe it as such because it was filed after PPG had already answered the complaint. As such, the court treated the motion as a suggestion under Federal Rule of Civil Procedure 12(h) that the court lacked jurisdiction.

At a status conference on May 24, 2012, the court extended the deadline for fact discovery to June 25, 2012. The court informed the parties that it would hear arguments on the defendant's suggestion that it lacked jurisdiction during the conference after the close of fact discovery, which the court scheduled for June 22, 2012. The court permitted the parties to file supplemental briefing. On June 7, 2012, defendant filed its supplemental brief (ECF No. 151).

2

On June 21, 2012 plaintiffs filed their brief in opposition (ECF No. 156) and an appendix thereto (ECF No. 157). On June 29, 2012, Defendant filed a reply brief (ECF No. 160).

The court held a hearing on the motion on July 9, 2012, at which it gave the parties its preliminary assessment, and indicated that this opinion and order would be forthcoming.

## II. Factual Background

### A. <u>Plaintiffs' Employment as Territory Managers</u>

Plaintiffs are former employees of PPG. PPG is a Pennsylvania corporation with offices in Pittsburgh, Pennsylvania. PPG manufactures paints and stains under the trade names Olympic Paints and Olympic Stains. Olympic Paints and Olympic Stains are sold at Lowe's Home Center Stores ("Lowe's stores"). PPG employed plaintiffs as "territory managers" relating to the distribution and sale of Olympic products at Lowe's stores. As territory managers, plaintiffs were each assigned to multiple Lowe's stores. They were responsible for ensuring that Olympic products were properly stocked and displayed within the shelf space PPG negotiated with the Lowe's stores. They were also responsible for conducting event and brand marketing, product-specific training for Lowe's employees, and engaging in conversations and demonstrations with customers. PPG classified these employees as exempt from the overtime requirements of the FLSA. The complaint alleges that PPG required plaintiffs to clock in and out of the Lowe's stores, and required them to work forty hours per week "under the Lowe's roof." The complaint alleges they were not compensated for additional time, including travel time between stores, when they were allegedly carrying products between stores, and conducting PPG business using their cell phones. The complaint also contains allegations of retaliation against some, but not all, plaintiffs after they complained about their exempt classification.

3

Particularly relevant to this motion is the parties' understanding about whether the salary paid to plaintiffs was compensation only for their forty hours per week "under the Lowe's roof" or was compensation for all hours worked, regardless of location. As set forth below, the record evidence is mixed on this question.

Plaintiffs point out that many of PPG's own internal documents, which referenced plaintiffs' salary and rate-type ("ANNUAL") indicated that plaintiffs' "hrs/wk" or "standard conditions—working hrs/wk" were "40." (Pls.' Ex. 35.)

Many plaintiffs indicated in their depositions that their understanding at the time was that "anything over 40 hours you thought you were working for free." (See, e.g., Pls.' Ex. 39 (ECF No. 157-39) at 70.) For example, Geoff Hudson testified that "we were told upon my hiring, 'You will be working eight hours a day,' or the understanding was a 40-hour workweek." (Pls.' Ex. 41 (ECF No. 157-41) at 23.) Jamie Briggs was told that he was "being paid for my 40 hours in the store" and that "there was no compensation for" other time spent working outside the store. (Pls.' Ex. 39 (ECF No. 157-39) at 58-60.) More examples can be found in plaintiffs' brief and the accompanying appendix.

To the contrary, defendant points to the testimony of certain plaintiffs tending to show that they knew their weekly paycheck would not change regardless of how many hours they worked. (Def.'s Supp. Br. (ECF No. 151) at 3.) Defendant, for example, relies on the testimony of sample plaintiff Kelly Munsterman, who responded affirmatively when asked whether he understood that his compensation was for all hours worked, not just for the forty hours worked at a Lowe's store. (Id. at 5; Def.'s Ex. 8 (ECF No. 151-3) at 27.) Defendant points to contemporaneous emails sent by sample plaintiffs in which they complained that their average

hourly earnings were decreasing because they were being asked to work more hours outside the Lowe's stores. (Def.'s Supp. Br. (ECF NO. 151) at 8.)

## B. *The Parties' Damages Stipulation and the Offer of Judgment*

On December 20, 2011, counsel for both parties signed a stipulation indicating they had reached a compromise regarding the number of hours worked by each plaintiff during the time he or she had been classified as exempt, obviating the need for discovery or argument on the number of hours worked by each plaintiff. (ECF No. 140-3.) The parties also reached a compromise agreement about the statute of limitations applicable to this action. Attached to the stipulation is a chart, which indicates the greatest value of all plaintiffs' overtime claims (including liquidated damages) is $352,649.46, assuming the half-time method of calculation is used, and incorporating the parties' agreement vis-à-vis the statute of limitations. (ECF No. 140-3 at 6.) The chart indicates that the maximum value of the overtime claims using the time-and-a-half method is $1,305,658.04. (Id.)

On February 1, 2012, counsel for defendant tendered an offer of judgment with respect to plaintiffs' overtime claims (Count I) in the amount of $353,179.73 (or approximately $500 more than the stipulated half-time value of plaintiffs' claims). (ECF No. 140-2.) Pursuant to the explicit terms of the offer of judgment, and by virtue of Federal Rule of Civil Procedure 68, the offer was deemed to have been rejected when plaintiffs failed to respond within two weeks.

### III.    Standard

#### A. *Federal Rule of Civil Procedure 12(h)(3)*

A rule 12(b)(1) motion must be filed before the filing of an answer. FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  An objection that a federal court lacks subject-matter jurisdiction, however, may be raised under Rule 12(h)(3) by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (citing FED. R. CIV. P. 12(h)(3)).  The Supreme Court instructed in Arbaugh that "in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own." Id. at 514 (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004)).  The Court made clear that a dispute relating to the "satisfaction of an essential element of a claim for relief" is properly left for jury determination.[1] Id.

In evaluating a factual jurisdictional challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "The form of the inquiry is flexible, though . . . ." Id. at 891 n.16.  In Mortenson, the Court of Appeals for the Third Circuit held in the context of the Sherman Act that it is "incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage." Id. at 892.  The court of appeals

---

[1] As noted in Arbaugh, distinguishing whether a statutory limitation is jurisdictional or reaches the merits is often difficult.  Arbaugh, 546 U.S. at 515-16.  The Court instructed that threshold limitations in statutory language should be construed as jurisdictional provisions only when accompanied by a clear statement of legislative intent that those provisions be construed as such.  Id.

recently clarified that this holding applies when the court is "faced with a jurisdictional issue that is intertwined with the merits of a claim." <u>CNA v. United States</u>, 535 F.3d 132, 144 (3d Cir. 2008). The court may consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction. <u>See</u> <u>Gotha v. United States</u>, 115 F.3d 176, 179 (3d Cir. 1997).

## B. <u>Mootness</u>

Federal courts will not hear moot cases because the constitution limits the courts' jurisdiction to "cases or controversies." <u>See</u> <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472 (1990). "[B]ecause mootness addresses whether a party, who once had standing, retains standing at some later time in the lawsuit, 'the threshold for satisfying the prohibition against mootness is somewhat lower than that for standing.'" <u>Pa. Food Merchants Ass'n v. Houstoun</u>, 999 F. Supp. 611, 617 (M.D. Pa. 1998) (quoting <u>Artway v. Attorney Gen.</u>, 81 F.3d 1235, 1246 (3d Cir. 1996)). The burden of demonstrating mootness "is a heavy one." <u>Los Angeles Cnty. v. Davis</u>, 440 U.S. 625, 631 (1979). Although the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once the burden has been met, the court may presume jurisdiction exists. <u>Cardinal Chem. Co. v. Morton Intern., Inc.</u>, 508 U.S. 83, 98 (1993). The party suggesting a controversy has become moot "bears the burden of coming forward with the subsequent events that have produced that alleged result." <u>Id.</u> If a party comes forward with evidence of mootness, the party asserting jurisdiction bears the burden of showing by a preponderance of the evidence that the case is properly before the court. <u>See</u> <u>McCann v. Newman Irrevocable Trust</u>, 458 F.3d 281, 286 (3d Cir. 2006); <u>see also</u> <u>Symczyk v. Genesis Healthcare Corp.</u>, 656 F.3d 189, 191 n.4 (3d Cir. 2011) ("'When subject matter jurisdiction is

challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" (quoting <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406 (3d Cir. 1991))), *cert. granted*, 80 U.S.L.W. 3512 (U.S. June 25, 2012) (No. 11-1059).

## C. *Federal Rule of Civil Procedure 68*

Federal Rule of Civil Procedure 68 provides:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.
>
> (c) Offer After Liability is Determined. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time—but at least 14 days—before the date set for a hearing to determine the extent of liability.
>
> (d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

FED. R. CIV. P. 68.  By requiring a plaintiff who ultimately obtains a less favorable judgment to pay the litigation costs incurred after he or she rejects a more favorable offer of judgment, the "plain purpose" of Rule 68 "is to encourage settlement and avoid litigation."  <u>Marek v. Chesny</u>, 473 U.S. 1, 5 (1985).

## D. *Rule 68 and Mootness*

A Rule 68 offer of complete relief moots the plaintiff's claim, "as at that point the plaintiff retains no personal interest in the outcome of the litigation." Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004) (citing Rand v. Monsanto Co., 926 F.3d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.")). "[W]hether or not the plaintiff accepts the offer, no justiciable controversy remains when a defendant tenders an offer of judgment under Rule 68 encompassing all the relief a plaintiff could *potentially* recover at trial." Symczyk, 656 F.3d at 195 (emphasis added).

As explained below, the specific standard by which a court should determine whether a Rule 68 offer has mooted the controversy is not well established. Courts in different jurisdictions have taken a variety of approaches, both with respect to the mechanics by which the court should determine whether the offer is greater than the value of the case (i.e., whether or not the court should conduct any fact finding), and also with respect to the implications of a Rule 68 offer which moots the case (i.e., whether judgment should be entered in favor of the plaintiff, or whether the defendant wins outright).

There is a split of authority whether an offer of judgment which moots a case should result in the entry of judgment for the plaintiff in the amount of the Rule 68 offer, or result in the plaintiff losing outright. Compare, e.g., Rand, 926 F.2d at 598 (holding that a plaintiff loses outright when he or she refuses to honor the defendant's offer to satisfy the plaintiff's entire demand), with Ambalu v. Rosenblatt, 194 F.R.D. 451, 453 (E.D.N.Y. 2000) (entering judgment in favor of the plaintiff according to the terms of the defendant's Rule 68 offer). Here, because

the court concludes the case is not moot, this court need not determine which of these approaches would be applicable. The Court of Appeals for the Third Circuit, in Weiss, cited Rand for the proposition that a plaintiff whose claim has been mooted by a rejected offer of judgment loses outright. Weiss, 385 F.3d at 340. The court of appeals did not itself, however, reach the issue— the appropriate resolution once a plaintiff's claim has been mooted by an offer of judgment which he rejected—since the court ultimately concluded the putative class claims in that case had not been mooted. Id.

Courts have taken different approaches when it is unclear whether the amount offered is greater than the amount to which the plaintiff may be entitled (or which may be recoverable at trial). For example, in Geer v. Challenge Financial Investors Corp., the court found itself unable to determine on the record before it whether the amount offered constituted full judgment, and considered this one reason (among others) not to dismiss the complaint. No. 05-1109, 2006 WL 704933, at *3 (D. Kan. Mar. 14, 2006); accord Sibersky v. Borah, Goldstein, Altshuler & Schwartz, P.C., 242 F. Supp. 2d 273, 277-78 (S.D.N.Y. 2002) (refusing outright to dismiss a case as moot where the plaintiff may be entitled to recover actual damages in excess of the offer of judgment, without weighing the evidence, because "[t]he Court cannot decide on this motion that there are no such damages"). To the contrary, in Askins v. Zachry Industrial, Inc., another case involving a dispute about the monetary value of the plaintiffs' claims, the district court accepted the report and recommendation of the magistrate judge, who concluded that the court lacked jurisdiction because the plaintiffs had failed to present sufficient evidence which could rebut the defendants' assertions, supported by affidavits, that the Rule 68 offer satisfied the full amount of the plaintiffs' demand. No. 09-CV-2202, 2010 WL 780329, at *3 (C.D. Ill. Mar. 3, 2010). In Askins, the court weighed the evidence before it, and concluded that the offer exceeded the value

of the claims, relying in large part on the allocation of the burden of proof in jurisdictional matters. Id.; see Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012) (declining to weigh the evidence and determine whether the value of the plaintiff's actual damages exceeded the value of the offer of judgment only because (a) the trial court had failed to conduct any jurisdictional fact finding and (b) the court of appeals was not empowered to make factual findings in the first instance).

When a plaintiff makes a specific demand in the complaint for damages, or otherwise specifies the value of his or her claims, an offer of judgment in excess of that value will be held to moot the case. Warren, 676 F.3d at 372. Such specification may come in the form of an admission or as a response to a discovery request. Id. In this case, the plaintiffs' specification of the multiple different values of their claims (based upon the resolution of numerous variables) in their stipulation with PPG will be considered binding.

The Askins and Geer decisions (and the other apparently contradictory decisions cited above) may be reconcilable after considering which decisions reflect the impact of the burden of production (or the burden of moving forward) in situations like the one presently before the court which must be placed on the defendant, and which decisions address the plaintiff's ultimate retention of the burden of persuading the court that it has jurisdiction over his or her claims. See Cardinal Chem., 508 U.S. at 98 (holding that the court may presume it has jurisdiction over a case once the plaintiff's initial burden of establishing jurisdiction has been satisfied); Cappuccio v. Prime Capital Funding LLC, 649 F.3d 180, 189-90 (3d Cir. 2011) (holding that a presumption in a civil case is "burst" upon the introduction of a "minimal" "quantum of evidence," leaving behind only the evidence and inferences to be judged according to the appropriate allocation of the burden of persuasion); McCann, 458 F.3d at 286 ("a presumption in a civil case imposes the

burden of production on the party against whom it is directed, but does not shift the burden of persuasion"). A reasonable interpretation of the decisions refusing to weigh the evidence is that the courts in those cases concluded that the defendant had not met his or her initial burden of production to move forward with the jurisdictional dispute.

Upon review and analysis of the decisions cited above, the court determines that this case should be dismissed if PPG satisfies its initial burden of producing minimal evidence tending to show that the case is moot and plaintiffs fail to prove by a preponderance of the evidence that they could *potentially*, see Symczyk, 656 F.3d at 195, recover greater relief at trial than the amount set forth in PPG's Rule 68 offer. Although not the same as the summary judgment standard because (a) the court is permitted to weigh the evidence and resolve disputed material facts where possible and (b) the court places the burden of proof on the nonmoving party, this standard is functionally similar to the "no reasonable jury" standard because the court should not dismiss the case unless plaintiffs fail to introduce even a minimal quantum of evidence tending to show a reasonable jury could award damages greater than the offer of judgment. Likewise, the standard—in some ways—is similar to the legal certainty standard applied to the amount in controversy requirement in diversity cases. Golden ex rel. Golden v. Golden, 382 F.3d 348, 354-55 (3d Cir. 2004) overruled in part on other grounds by Marshall v. Marshall, 547 U.S. 293, 310-11 (2006). The primary difference is that a jurisdictional challenge to the amount in controversy is a facial challenge as opposed to a factual challenge to the court's jurisdiction, and the court in that situation is not required to review the facts beyond assessing the allegations in the complaint. Id.

### IV. Discussion

The parties stipulated to two different maximum values of plaintiffs' overtime claims. The resolution of which maximum value is the actual maximum value of the case turns on whether the half-time method or the time-and-a-half method of damages calculations should be utilized in this case. Following the damages stipulation, PPG presented a Rule 68 offer to plaintiffs for an amount which is greater than any possible recovery under the half-time method according to the calculations in the stipulation, but is significantly lower than the maximum value under the time-and-a-half method. PPG moved the court to dismiss the case, arguing that the half-time method applies as a matter of law, and that the case is moot since the offer of judgment exceeded the maximum value of the case as stipulated by the parties. Plaintiffs present two arguments why the court should not dismiss the case. Plaintiffs argue that: (1) PPG is collaterally estopped from asserting that the half-time damages method applies because a state court in Washington recently ruled otherwise in a separate case filed by a territory manager of PPG under Washington's statutory equivalent to the FLSA; and (2) the half-time damages method does not apply to this case. This memorandum opinion will address each argument raised by plaintiffs in order.

### A. _Issue Preclusion (or Collateral Estoppel)_

Plaintiffs' first argument is that a court order from a related case in Washington, <u>Fiore v. PPG Industries, Inc.</u>, 279 P.3d 972 (Wash. Ct. App. 2012),[2] collaterally estops PPG from asserting the half-time method should apply to this case. In <u>Fiore</u>, the Court of Appeals of

---

[2] At the time PPG filed the motion to dismiss at issue in this opinion, the Court of Appeals of Washington had not yet issued its opinion affirming the relevant aspect of the trial court's decision.

Washington affirmed in part a trial court's entry of summary judgment in favor of a territory manager employed by PPG who filed a lawsuit against PPG under the Washington Minimum Wage Act, WASH. REV. CODE § 49.46.005 *et seq.* ("MWA"), for unpaid overtime. Fiore, 279 P.3d at 976. The court of appeals held that the trial court did not err by applying the time-and-a-half method. Id. at 983-84. Among other authorities, the court relied on state administrative policy statements which militated for application of the time-and-a-half method in the absence of evidence that the employer established a specific number of hours for which a salary was intended to compensate an employee. Id. at 983-84 & n.11.

Under the doctrine of issue preclusion,[3] a determination on an issue necessary to support the judgment of a court with competent jurisdiction is conclusive in subsequent suits involving a party to the initial suit or one in privity with a party thereto. Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002) ("Stated broadly, issue preclusion prevents relitigation of the same issues in a later case."). Where the Full Faith and Credit Clause of the United States Constitution, U.S. CONST. art. IV, § 1, requires *state* courts to afford preclusive effect to one another's judgments, Choi v. Kim, 50 F.3d 244, 248 n.8 (3d Cir. 1995), the Full Faith and Credit Act, 28 U.S.C. § 1738, requires *federal* courts give state court decisions "the same preclusive effect they would be given in the courts of the rendering state," Del. River Port Auth, 290 F.3d at 573. Under the Full Faith and Credit Act in order to determine the preclusive effect of the Washington state court decision, this court must look to the law of Washington. See id.

---

[3] Courts generally now use the term "res judicata" to describe the category of rules previously known as "merger," "bar," "collateral estoppel," and "direct estoppel." Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008). "Res judicata" in the modern lexicon has two constituents, "claim preclusion" and "issue preclusion." Id. at 892 & n.5. In this memorandum opinion and order, "collateral estoppel" and "issue preclusion" will be interchangeably used.

PPG first argues the legal issues presented in this case are distinct from those in <u>Fiore</u>. Specifically, PPG notes that the decision in <u>Fiore</u> did not involve the application of the FLSA; rather, that court applied the MWA, Washington's analogous law. Second, PPG argues in the alternative that (a) the <u>Fiore</u> decision involved a pure legal conclusion that the half-time method could not be used in that case, and (b) legal conclusions are not entitled to issue preclusive effect. Finally, PPG argues that Washington courts have not endorsed the use of non-mutual offensive collateral estoppel.[4] These arguments will be addressed in order from last to first.

With respect to PPG's third argument, notwithstanding PPG's assertion to the contrary, Washington courts have endorsed the use of non-mutual offensive collateral estoppel. <u>See</u> <u>Hadley v. Maxwell</u>, 27 P.3d 600, 602 (Wash. 2001). In <u>Hadley</u>, the Supreme Court of Washington decided a case which "involve[d] offensive collateral estoppel, where 'a plaintiff . . . seek[s] to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff.'" <u>Id.</u> (quoting <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 329 (1979)). The court decided that application of collateral estoppel requires:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

<u>Id.</u> (quoting <u>Southcenter Join Venture v. Nat'l Democratic Policy Comm.</u>, 780 P.2d 1282 (Wash. 1989)). Ultimately, in <u>Hadley</u>, the court held that issue preclusion was inappropriate under the facts of that case, where the earlier proceeding only involved the risk of being subject to a

---

[4] Under the doctrine of non-mutual issue preclusion, the preclusive effect of a judgment is not limited to subsequent suits between the same parties to the original suit; rather, a litigant may be precluded "from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary." <u>Peloro v. United States</u>, 488 F.3d 163, 174-75 (3d Cir. 2007).

nominal fine, because the stakes were too low to provide a sufficient incentive to litigate fully the issue.  Id.

With respect to PPG's second argument, it is not clear whether Washington courts endorse the use of issue preclusion on questions of law.  It may be possible in certain circumstances.  See Franklin v. Klundt, 746 P.2d 1228, 1230-31 (Wash. Ct. App. 1987) (noting that collateral estoppel operates without regard to whether the first determination of a particular issue was correct, "and can apply to preclude relitigation of both issues of law and issues of fact," but indicating there is potentially an exception for "'unmixed questions of law' arising in successive actions involving substantially unrelated claims").

Notwithstanding the Franklin decision, there is some authority within the decisions of the Supreme Court of Washington suggesting the doctrine of collateral estoppel should not apply to purely legal determinations.  See McDaniels v. Carlson, 738 P.2d 254, 259 (Wash. 1980) ("[C]ollateral estoppel extends only to 'ultimate facts', *i.e.*, those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim") (citing Beagles v. Seattle-First Nat'l Bank, 610 P.2d 962, 965-66 (Wash. Ct. App. 1980) ("[O]nly questions of fact actually litigated and essential to the judgment in the first adjudication become precluded by collateral estoppel.")).  Both the McDaniels and Beagles decisions relied on the Restatement (First) of Judgments which distinguished between questions of law and questions of fact.  RESTATEMENT (FIRST) OF JUDGMENTS §§ 68, 70 (1942).[5]  Notably, neither decision considered the question whether legal issues are subject to collateral estoppel, and both cited only to section 68 of the Restatement

_____

[5] The Restatement (Second) of Judgments, published in 1982, expressly applies collateral estoppel to both kinds of questions according to the same standards.  RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

(First) of Judgments, which applies only to facts. The <u>Franklin</u> decision, on the other hand, cited to section 70, which provides that a determination of a question of law may provide the basis for collateral estoppel if both causes of action arise out of the same subject matter or transaction and if injustice would not result. <u>Id.</u> § 70. The language in <u>McDaniels</u> that the doctrine extends "*only* to ultimate facts," should not be construed to mean that it does not apply to legal issues; rather, the limiting language was meant to distinguish ultimate facts from collateral facts, such as facts necessary for the making of an evidentiary ruling.

Recent case law suggests, and this court predicts, that the Supreme Court of Washington would apply the Restatement (Second) of Judgments. <u>See, e.g.</u>, <u>Lemond v. State, Dept. of Licensing</u>, 180 P.3d 829, 833 (Wash. Ct. App. 2008) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 27); <u>see also</u> Phillip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805 (1985) (urging Washington courts to adopt the second restatement approach). Because section 27 of the Restatement (Second) of Judgments applies collateral estoppel to issues "of fact *or* law," RESTATEMENT (SECOND) OF JUDGMENTS § 27, PPG's second argument is without merit. Even if the Washington decision were made entirely on legal as opposed to factual grounds, the determination could still be preclusive in this court, if the elements of issue preclusion were met.

With respect to PPG's first argument— that this case does not involve the same issue as the Washington case—defendant is correct for several reasons. PPG argued that the FLSA and the MWA present different questions of law. Washington courts have consistently considered their state wage and hour law to be so closely modeled after the federal statute that they "look to the FLSA and the case law interpreting it to guide [them] in construing [the] state statute." <u>Inniss v. Tandy Corp.</u>, 95 Wash. App. 1049 (Wash. Ct. App. 1999). The Supreme Court of

Washington has, however, instructed the courts in that state that FLSA decisions are merely instructive, and not dispositive, when interpreting the MWA. Hisle v. Todd Pacific Shipyards Corp., 93 P.3d 108, 118 (Wash. 2004) ("[T]hough FLSA cases are helpful when interpreting the MWA, we have consistently noted Washington courts need not walk directly in the federal judiciary's footsteps as the two statutes are not one and the same."); Drinkwitz v. Alliant Techsystems, Inc., 996 P.2d 582, 586 (Wash. 2000) ("[T]he MWA and FLSA are not identical and we are not bound by such authority.").

The decision of the Court of Appeals of Washington in Fiore is exemplary of the differences between the MWA and the FLSA. There, the court relied explicitly on administrative policy statements which do not apply to the FLSA and which persuaded the court to presume the appropriateness of the time-and-a-half method in the absence of evidence that the salary paid to the plaintiff in that case was intended to provide compensation for a fixed number of hours per week (greater than forty). Fiore, 279 P.3d at 983-84 & n.11. The court explicitly distinguished its interpretation of the MWA from the Court of Appeals for the Ninth Circuit's interpretation of the FLSA and the analogous California wage and hour law in Bao Yi Yang v. Shanghai Gourmet, LLC, 471 F. App'x 784 (9th Cir. 2012). See Fiore, 279 P.3d at 984 n.11 ("[I]n Bao Yi Yang, the Ninth Circuit was interpreting federal and California wage and hour laws. Washington interpretive policy states, to the contrary, that '[i]f the employer fails to establish a specified number of hours per week for which the salary is intended to compensate the worker, it will be assumed that the salary is based upon a 40-hour workweek, and thus, 1-1/2 times the worker's regular rate will be due for all hours worked in excess of 40 in each workweek.' We will not employ a cursory statement made in an unpublished decision

interpreting another state's law to subvert a properly promulgated Washington declaration of administrative policy.").

Because the law applied in <u>Fiore</u> is explicitly distinguished from the FLSA in that opinion, the court concludes that collateral estoppel is inappropriate because the issues are not "identical." <u>See</u> <u>Hadley</u>, 27 P.3d at 602.

Even if the legal standards applied in <u>Fiore</u> were exactly the same as those applicable in this case, issue preclusion would not be appropriate because the ultimate determination whether to award half-time damages or time-and-a-half damages turns on the resolution of factual issues which may be unique to each plaintiff, as explained below. Thus, the conclusion of the court in Washington about one plaintiff in that litigation should not be given preclusive effect vis-à-vis different individuals in this litigation. Ultimately, the amount of damages will be determined by whether the parties understood that the weekly salary paid to plaintiffs was compensation only for their first forty hours, or was compensation for all time worked. A party asserting the applicability of collateral estoppel has the burden of showing that the "issues are identical and that they were determined on the merits in the first proceeding." <u>Luisi Truck Lines, Inc. v. Wash. Util. & Transp. Comm'n</u>, 435 P.2d 654 (Wash. 1967). "Thus, application of collateral estoppel is limited to situations where the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding, and 'where the controlling facts and applicable legal rules remain unchanged.'" <u>Lemond</u>, 180 P.3d at 805 (quoting <u>Standlee v. Smith</u>, 518 P.2d 721(Wash. 1974)). Here, as the court explains below, the controlling facts with respect to an award of damages are whether the plaintiffs *in this case* agreed to compensation for a fixed number of hours, as opposed to for all hours worked. It is possible that collateral estoppel could apply in similar circumstances to those present in this case; for example, where

the first court's judgment (1) was based in large part on highly persuasive, systemic and categorical evidence about the interaction between an employer and a specific group of its employees, (2) was based on the facts surrounding a collective bargaining agreement, or (3) which otherwise applied equally to plaintiffs in a successive litigation. There, however, was no evidence provided for the court to conclude that the controlling facts in <u>Fiore</u> are controlling in this case.[6]

For the reasons stated above, the court declines to grant the Washington judgment preclusive effect on the issue of damage calculations in this case. The law applied by the court in <u>Fiore</u> was explicitly distinguished from the FLSA, which is controlling in this case, and plaintiffs failed to prove that the controlling facts in that case are the same facts which will be controlling in this case.

## B. *<u>Damages under the FLSA</u>*

The FLSA provides that an employer who fails to pay wages as required by the act is ordinarily liable for those back wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). If the employer, however, proves to the court that its action or omission (in violation of the FLSA) was done in good faith and under the reasonable belief that it was not in violation of the law, the court may, in its sound discretion, reduce the amount of liquidated damages, or eliminate them altogether. 29 U.S.C. § 260. The Court of Appeals for the Third

---

[6] In another related litigation in Tennessee, a federal district judge decided the Washington judgment did not have preclusive effect. <u>Stage v. PPG Indus., Inc.</u>, No. 1:10-CV-5, 2011 WL 2532219, at *9 n.16 (E.D. Tenn. June 24, 2011) ("The Court declines apply [*sic*] issue preclusion here for a number of reasons, including the fact that the Washington judgment sets forth no reasoning which enables this Court to assess the identity of facts and issues between that case and this, as well as the fact that an appeal of the Washington case is currently pending."). That opinion, however, was issued prior to the Court of Appeals of Washington's lengthy explanation of the law and facts involved in <u>Fiore</u>.

Circuit has explained that § 260 requires the district court to make a dual inquiry into the employer's *subjective* good faith and the *objective* reasonableness of his conduct. Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999). Under the FLSA, an award of liquidated damages is mandatory except where the employer shows it acted reasonably *and* in good faith. Id.; accord Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1245 (10th Cir. 2000). Thus, an honest but unreasonable mistake is not sufficient to satisfy the objective reasonableness test set forth in § 260. Brooks, 185 F.3d at 137. The district court is not empowered with the discretion to reduce or eliminate liquidated damages until "the employer . . . come[s] forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements." Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991); see Brooks, 185 F.3d at 137.

As explained below, the issue of back wages requires a jury determination, whereas liquidated damages are within the discretion of the court. There is a right to a jury trial in private actions brought under the FLSA. Lorillard v. Pons, 434 U.S. 575, 580-81 (1978). That right arises from the Seventh Amendment, rather than from any statutory provision within the FLSA. Lehman v. Nakshian, 453 U.S. 156, 164 n.11 (1981). In private actions brought under section 16 of the FLSA, such as this case, the jury will determine both liability for *and the amount* of an award of back pay wages. Brock v. Superior Care, Inc., 840 F.2d 1054, 1063 (2d Cir. 1988). There is no right to a jury determination on the issue of liquidated damages under section 16, 29 U.S.C. § 216, because liquidated damages may be reduced or eliminated at the discretion of the district court. Brock, 840 F.2d at 1063; see 29 U.S.C. § 260. The court may submit the matter to the jury to answer in an advisory capacity whether defendant acted in good faith. See, e.g., Robinson v. Food Serv. of Belton, Inc., 415 F. Supp. 2d 1232, 1239-40 (D. Kan. 2005).

Section 7(a)(1) of the FLSA establishes that the maximum regular workweek is forty hours and that employees are entitled to overtime pay for all hours beyond forty. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the *regular rate* at which he is employed." (emphasis added)). The "regular rate" under the FLSA is an hourly rate. 29 C.F.R. 778.109. In order, therefore, to calculate the amount of statutory overtime owed to a nonexempt *salaried* employee, some amount of computation is required to convert the salary to an hourly rate. Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 673 (7th Cir. 2010). The appropriate means of converting a salary to an hourly "regular rate" depends on the parties' agreement about whether the salary is intended to cover a fixed number of hours, whether the salary is actually a contract with a specific, fixed hourly rate, or whether it is a salary for all hours worked, regardless of the number of hours worked per week. See 29 C.F.R. §§ 778.113, 778.114. The regular rate is contingent on the parties' intent. Id. § 778.113 ("[T]he regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary *is intended* to compensate." (emphasis added)). The "keystone" of Section 7(a) is a determination of the employee's "regular rate." [7] Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945).

In Overnight Motor Transportation Co. v. Missel, the Supreme Court held that in the absence of any agreement adopting a specific hourly rate for an employee, the regular rate of a salaried employee working hours that fluctuate each week is the fixed weekly wage divided by

---

[7] As is explained below, however, some courts refuse to apply damages calculations which are functionally similar to the fluctuating work week regulation, even if it appears that the parties intended the salary to provide compensation for all hours worked.

the number of hours actually worked in that week. 316 U.S. 572, 580-81 & n.16 *superseded on other grounds by statute as stated in* Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 n.22 (1985). The Court contemplated that the regular rate would vary on a weekly basis, depending on the number of hours actually worked by the employee in any given week. Id. at 580. The Court noted in a footnote that "[w]age divided by hours equals regular rate. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours." Id. at 580 n.16. Courts have construed this footnote in two ways, with some seeing it as an indication that the employee has already received "straight time" for the hours worked over forty. According to this interpretation, the employee is only entitled to the half-time premium on top of the straight time payment he already received. Other courts have concluded that employers must pay damages equal to one and one-half times the regular rate derived from the salary in addition to the entire salary already paid to the employee. Compare, e.g., Martin v. Tango's Rest., 969 F.2d 1319, 1324 (1st Cir. 1992) (limiting damages of a misclassified employee under the authority of Missel to one-half the regular rate), with Hunter v. Spring Corp., 453 F. Supp. 2d 44, 54-62 (D.D.C. 2006) (calculating damages for misclassified employees at one and one-half the regular rate under Missel after concluding there was no mutual understanding between the parties that the salary was intended to compensate for all hours worked).

Some courts that limit damages to the half-time premium do so under the authority of the Department of Labor's "fluctuating workweek" regulation, 29 C.F.R. § 778.114, which permits employers to calculate overtime for employees who meet certain prerequisites on a fluctuating weekly basis (with the base hourly rate changing depending on the number of hours worked by the employee that week). See, e.g., Valerio v. Putnam Associates, Inc., 173 F.3d 35,

23

39-40 (1st Cir. 1999). See generally Urnikis-Negro, 616 F.3d at 675-80, 682-83 (describing the fluctuating workweek regulation and the various ways courts have applied it in structuring damages awards in FLSA misclassification cases); O'Brien v. Town of Agawam, 350 F.3d 279, 286-90 (1st Cir. 2003) (explaining the fluctuating workweek regulation).

Other courts have held that the half-time method is appropriate independent of the fluctuating workweek regulation, based upon the reasoning that misclassified employees who agree to payment for all time worked have already received the straight time to which they are entitled. See, e.g., Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1381-82 (S.D. Fla. 2007) ("Bacardi does not rely on the [fluctuating workweek] method as its basis for contending that Mr. Torres' back pay, if any, should be computed by half-time. Rather, Bacardi argues that because Mr. Torres has already received his regular rate for all hours worked, he is entitled to half-time for those hours worked in excess of forty per week.").

Many of the courts that applied the time-and-a-half method utilized that method *because* they interpret the terms of the fluctuating workweek regulation to require contemporaneous payment of overtime, a condition which can never be retroactively satisfied. These courts reason that the fluctuating workweek regulation's perceived inapplicability to retroactive payment implies that that type of payment calculation is inappropriate to determine back pay damages. See, e.g., Scott v. OTS Inc., No. Civ.A. 1:02CV1950, 2006 WL 870369, at *12 (N.D. Ga. Mar. 31, 2006); Cowan v. Treetop Enter., 163 F. Supp. 2d 930, 941 (M.D. Tenn. 2001); Rainey v. Am. Forest and Paper Ass'n, Inc., 26 F. Supp. 2d 82, 100-01 (D.D.C. 1998).

This court concludes that the best approach is not to conflate the fluctuating workweek regulation with the damages calculation. This is the approach taken in Torres and Urnikis-Negro. In Urnikis-Negro, the court of appeals held that the fluctuating workweek regulation

24

itself *neither authorizes nor prohibits* the use of the half-time method in assessing damages in an FLSA misclassification case.  616 F.3d at 666.  The court noted that the regulation instead "sets forth one way in which an employer may lawfully compensate a nonexempt employee for fluctuating work hours; it is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer has breached its statutory obligations."  Id. Although the court concluded the regulation was not intended as a guide for crafting judicial remedies or assessing damages, the court also concluded it had been appropriate for the district court to apply a half-time measure of damages because that method was approved by the Supreme Court in Missel.  Id. at 666, 679-80 ("But finding that section 778.114(a) itself is inapplicable does not compel the conclusion that reliance on the [fluctuating workweek] method of calculating [the plaintiff's] regular rate of pay was erroneous.  Setting the Department of Labor's rule aside, a court still must ascertain the employee's regular rate of pay and calculate an appropriate overtime premium based on that rate.").

Ultimately, the employee's regular rate of pay is a *factual* issue, id. at 680 (citing Walling, 325 U.S. at 424-25), which requires a threshold determination whether the salary was intended to compensate for a fixed number of hours, or alternatively for all hours worked.  Id.  If the salary was for a fixed number of hours, the employees are entitled to time-and-a-half for overtime work.[8]  If the salary was for all time worked, the employees are only entitled to the

---

[8] This conclusion assumes the fixed number of hours was forty per week.  If, on the other hand, the salary was actually intended to compensate for fifty hours, the employees would be entitled to half-time for the first ten hours or less of overtime and time-and-a-half for any overtime worked beyond the first ten hours.

half-time premium, because they already received payment for straight time on their overtime hours.[9]

Because there is a need for factual findings on the merits of this claim, the court cannot find PPG's offer of judgment mooted this case. Although the court is empowered to resolve factual issues in resolving a factual challenge to its subject-matter jurisdiction, when a party asserts a case is moot by virtue of a Rule 68 offer of judgment, and the dispositive facts are facts which would normally be resolved by the jury, as here, the proper resolution of the matter is to allow the matter to reach the jury unless it is abundantly clear that no jury could reasonably award damages in excess of the amount offered. Although the amount of damages is not precisely "an essential element of a claim for relief," which the Supreme Court explained is properly left for jury determination when subject-matter jurisdiction turns on contested facts, Arbaugh, 546 U.S. at 514, it is a factual matter, which is "intertwined with the merits of a claim," see CAN, 535 F.3d at 179. As such, this court will apply the kind of flexible inquiry contemplated in resolving a mootness argument, which demands less in the way of proof than may be required at trial where the facts relevant to the mootness determination, as here, are

---

[9] In the absence of an agreement about the purpose of the salary, it may be appropriate to presume the salary is only intended to compensate for the first forty hours each week, in light of the remedial nature of the FLSA, and because the half-time damages calculation method provides potential incentives for employers to classify borderline but nonexempt employees as exempt. See Urnikis-Negro, 616 F.3d at 679-80; In re Texas EZPawn Fair Labor Standards Act Litig., 633 F. Supp. 2d 395, 404-405 & n.9 (W.D. Tex. 2008); Hunter, 633 F. Supp. 2d at 62 n.19. On the other hand, the explicit holding in Missel suggests that the courts should presume a salary is compensation for all hours actually worked. 316 U.S. at 580-81 & n.16; see Martin, 969 F.2d at 1324 ("Absent an advance agreement, the language of the [FLSA] . . . treats the regular rate for that week as the fixed weekly wage divided by the number of hours actually worked in that week, including overtime hours."). The court need not make a final determination about the propriety of the presumption at this stage, since plaintiffs have presented sufficient evidence of an agreement to meet the relevant burden of persuasion that they could possibly be entitled to damages greater than those offered by defendant in its Rule 68 offer.

intertwined with the merits of the claim.  See id.; CNA, 535 F.3d at 132; Mortenson, 549 F.2d at 891 & n.16.

Here, plaintiffs presented evidence that plaintiffs understood their salaries covered only the forty hours they worked at the Lowe's stores and they would not be compensated for other hours worked.  PPG points to evidence of the contrary—specifically, that plaintiffs were aware they would not receive overtime compensation even if they worked more hours and were, therefore, aware that their salaries were compensation for all hours worked.  Proper resolution of this matter requires fact-finding and credibility determinations, which should be left to the jury.  A reasonable jury could resolve the facts in favor of plaintiffs, in which case plaintiffs would be entitled to damages in an amount greater than the value of PPG's offer of judgment.  Plaintiffs have shown to the satisfaction of the court that they could potentially recover greater relief at trial than the amount set forth in the offer from PPG.  Although the parties, based upon their briefing and argument, believe that the appropriate resolution of this motion, requires a purely legal conclusion about which method to calculate damages (half-time versus time-and-a-half) is appropriate under the FLSA, the court concludes otherwise.  The court, at this stage, without impermissibly invading the province of the jury, cannot determine that plaintiffs are only entitled to half-time damages.  The case was not mooted by the offer of judgment, and the motion to dismiss must be denied.  There is still a "controversy" in the constitutional sense.

If the court were to grant this motion, and accept PPG's interpretation of the mootness doctrine in the context of Rule 68, it could lead to absurd results.  A defendant with a good faith belief that it was not liable for a given claim, instead of following the normal litigation process— going through discovery, filing a summary judgment motion, and potentially having a jury resolve disputed material facts—could merely present a *de minimis* Rule 68 offer, and (once that

offer lapsed or was rejected) suggest to the court that the court lacked subject-matter jurisdiction since the plaintiff was in reality not entitled to *any* relief.  In such a situation, the defendant should not be permitted to side-step the normal litigation process and the court should not be required to conduct a bench trial on the disputed facts merely because the defendant (if right) has offered greater relief than the plaintiff might potentially recover.  The process would potentially violate the plaintiff's Seventh Amendment right to a jury trial on these issues, and would put undue strain on the judicial system.  It is illogical that a case could be mooted when there is still a sufficient controversy which would necessitate an extensive amount of fact-finding and weighing of evidence to resolve the dispute.   The court, in this case, applied a standard, in light of these concerns, which puts defendant to the task of coming forward with evidence to show its offer of judgment exceeded the value of the case and puts plaintiffs to the task of adducing sufficient evidence to demonstrate that a reasonable jury could find in their favor with respect to the calculation of damages at a level higher than the offer of judgment.  For this case to have been mooted by the offer, plaintiffs would have had to admit or stipulate that their damages were less than the value of the offer, or there would have to be a purely legal basis for the court to conclude the offer of judgment exceeds the value of the claim (e.g., when there is a statutory limit to the amount of damages).  Here, because plaintiffs may potentially be entitled to greater relief than was offered, the case is not moot, and the motion to dismiss must be denied.

Most courts which have granted motions to dismiss on the grounds of mootness following a Rule 68 offer of judgment have had before them some type of binding, unconditional stipulation or admission vis-à-vis the amount of damages to which the plaintiffs were entitled, or were presented with a situation in which the offer of judgment exceeded the statutory maximum.  Those are the kinds of situations where the court is capable of determining that the offer mooted

the case without conducting a premature trial or invading the province of the jury. In other words, in those situations there was no continuing, legitimate controversy regarding the value of the case. Extending the doctrine to situations such as the one before the court would place an unreasonable burden on trial courts, may lead to unjust results in some cases, and would potentially deprive litigants of their constitutional right to a jury resolution of their FLSA claims.

### V. Conclusion

Here, upon review of the affidavits and evidence submitted to the court, a reasonable factfinder could conclude that plaintiffs believed they were only being paid for the forty hours they were required to "clock-in" at Lowe's stores. Under those circumstances, the value of this case (assuming PPG is liable) exceeds the value of the offer of judgment. Several plaintiffs testified that they were told all work done outside the stores was on their own time, and that they were not paid for any work done outside the stores, or in between stores. The court concludes that plaintiffs could *potentially* recover more damages than the offer of judgment, because the resolution of the underlying factual matters might make the application of the half-time method inappropriate here. The case is not moot because the value of the offer of judgment is less than plaintiffs could *potentially* obtain at trial. The court will, therefore, deny PPG's motion to dismiss for lack of subject-matter jurisdiction.

*ORDER*

AND NOW, this 29th day in August, 2012, for the reasons set forth above, defendant PPG Industries, Inc.'s motion to dismiss for lack of subject-matter jurisdiction (ECF No. 139) is hereby DENIED.

By the court,

 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge