**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUE ANN SEYMOUR, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Civil Action No. 2:09-cv-01707 |
| PPG INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) JUDGE JOY FLOWERS CONTI |
| | ) |
| | ) |
| | ) |

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT ON EXEMPTION

### INTRODUCTION AND SUMMARY OF ARGUMENT

The above-named Plaintiffs filed this action, individually and on behalf of similarly situated current and former Lowe's Team Territory Managers employed by Defendant PPG who elected to opt into this action pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiffs claim they were misclassified as exempt employees and are entitled to be awarded unpaid overtime wages.[1] PPG bears the burden of proof regarding Plaintiffs' FLSA classification. Based upon the uncontroverted facts, Plaintiffs submit that PPG cannot meet its burden of proof and that the Territory Managers were misclassified as exempt from the FLSA's overtime provisions, and therefore, Plaintiffs are entitled to partial summary judgment with respect to the exemption issue.

---

[1] The amount due to Plaintiffs is in dispute, with Plaintiffs claiming that they 1) were only compensated for forty hours per week; and 2) are entitled to an award of time and one half overtime for all hours worked per week over forty, regardless of how many hours their salaries were intended to compensate for. PPG asserts that Plaintiffs were paid for all hours worked and thus are only entitled to a "half time" premium.

1

## ISSUE PRESENTED

Whether PPG misclassified Territory Managers' job as exempt from the overtime provisions of the FLSA under the "administrative exemption" where Territory Managers' primary duties involved the performance of manual, low-level, discretion-less, retail sales and in-store merchandising work, which was strictly controlled by PPG management and by Lowe's store managers?

## FACTUAL BACKGROUND

A Concise Statement of Undisputed Material Facts was contemporaneously filed with this brief and is incorporated herein by reference.

## ARGUMENT

### I.   LEGAL STANDARD

Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact in dispute may not rest upon the allegations in the complaint, but rather must set forth "specific facts" showing a "genuine issue" for trial. *Anderson*, 477 U.S. at 256. In order to show a "genuine issue" for Rule 56 purposes, a party must produce "significant probative evidence" showing an actual dispute as to a material fact. *Id.* at 249. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Id.* at 247-48. (emphasis in original). While the party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and ... [must] demonstrate the absence of a

2

genuine issue of material fact, the court must enter summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## II. PURPOSE AND CONSTRUCTION OF THE FAIR LABOR STANDARDS ACT.

The FLSA requires employers to compensate its employees engaged in commerce for a workweek longer than forty hours at a rate of not less than one and one-half times the regular rate of the employee's compensation. *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462 (3d Cir. 2012) (citing 29 U.S.C. § 207(a)(1)).

In a message to Congress concerning the legislation, President Franklin Roosevelt stated:

Our nation so richly endowed with natural resources and with a capable and industrious population should be able to devise ways and means of insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. A self-supporting and self-respecting democracy can plead no justification for the existence of child labor, no economic reason for chiseling workers' wages or stretching workers' hours.

H.R. Rep. 101-260, at 9 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696, 696-97. The Act was intended to tackle the twin evils of "overwork" and "underpay." *Overnight Motor Transp. Co. V. Missel,* 316 U.S. 572, 578 (1942).

The purposes of the overtime requirement of the FLSA are two-fold: (1) to spread employment by placing financial pressures on the employer to hire additional workers rather than employ the same number of workers for longer hours; and (2) to compensate employees who do work "overtime" for the burden of having to do so. *Jewel Ridge Coal Corp., v. Local No 6167, United Mine Workers of America,* 325 U.S. 161, *reh. denied,* 325 U.S. 897 (1945); *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, *reh. denied,* 326 U.S. 804 (1945). Likewise, the courts have long recognized that the FLSA is remedial and must be given a liberal

3

construction with its manifest intent and purpose in *Walling v. Rutherford Food Corp.,* 156 F. 2d 513, *cert. granted*, 329 U.S. 704 (1946), *aff'd. as modified*, 331 U.S. 722 (1947), *reh. denied,* 332 U.S. 785 (1947). *See also*, *Mitchell v. Lublin, McGaughy & Assoc.,* 358 U.S. 207 (1959) (This chapter is construed liberally to apply to the furthest reaches consistent with congressional direction).

## III. PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE PPG *CANNOT* PROVE THAT THE PLAINTIFFS' EMPLOYMENT "FIT PLAINLY AND UNMISTAKENLY" WITHIN THE TERMS OF THE "ADMINISTRATIVE EXEMPTION."

In light of the FLSA's broad remedial aims, FLSA exemptions should be construed narrowly, that is, against the employer. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Specifically, an employer seeking to apply an exemption to the FLSA must prove that the employee and/or employer come "plainly and unmistakably" within the exemption's terms. *Id.*; *see also Auer v. Robbins,* 519 U.S. 452, 462 (1997); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008); *see also Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960); *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1143 (3d Cir. 1983)). The Department of Labor (DOL) regulations are the primary source of guidance for determining the scope of the exemptions to the FLSA and are entitled to judicial deference. *Clements,* 530 F.3d at 1227; *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 843-44 (1984).

a. ***PPG Industries Erroneously Classified Territory Managers as Exempt Under the Administrative Exemption.***

4

PPG contends that Territory Managers are exempt from the overtime requirements of the

FLSA under the administrative employee exemption.[2] The DOL Regulations define an

"administrative employee" as a person:

(1) Who is compensated on a salary or fee basis at a rate of not less than $455 per week;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; *and*

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 (emphasis added).[3] The three prongs are joined by the word "and", thus

requiring each of the three prongs of the test to be met. It is undisputed that Territory Managers

in this case meet the first prong of the three prong test, i.e., that they were paid on a salary or fee

basis of not less than $455 per week.

29 C.F.R. § 541.700 describes the second, "primary duty" prong as follows:

(a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. *The term "primary duty" means the principal, main, major or most important duty* that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the

---

[2] PPG originally asserted it classified the Territory Managers as exempt under both the administrative exemption and the "outside sales" exemption. However, in its later Answer to the Amended Complaint, PPG abandoned its contention that Territory Managers were exempt under the "outside sales" exemption. [Doc. 111, Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint].

[3] On August 23, 2004, the U.S. Department of Labor revised its regulations explaining the administrative exemption. 29 C.F.R. § 541.200-203. The pre-2004 regulation uses two different tests depending upon the employee's earnings: a "short test" and a "long test." The 2004 regulation eliminated the "short test/long test" distinction and, instead, imposes a single "standard duties" test that encompasses all employees except highly compensated employees. *See Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 629 (6th Cir. 2009).

relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) *The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee.* Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700 (emphasis added).

Inquiry into the exempt status of an employee under 29 U.S.C. § 213(a)(1) is "intensely factbound and case specific." *Davis v. Mountaire Farms, Inc.*, 551 F. Supp. 2d 343, 347 (D. Del. 2008) (citing *Dalheim v. KDFW TV,* 918 F. 2d 1220, 1226 (5th Cir. 1990)). Each case must be judged on its own peculiar facts. *Dalheim*, 918 F. 2d, at 1227. The common thread in cases involving an employer's claimed administrative exemption is that a job title provides no guidance on whether the exemption applies; rather, a fact-sensitive inquiry is required. 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt or nonexempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirement of the regulation in this part."); *See also Reich v. City of Sapulpa, Okla.*, 30 F. 3d 1285, 1287-89 (10th Cir. 1995); *Hickton v. Enter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.)*, 09-cv-1188; 2012 U.S. Dist. LEXIS 130694 (W.D. Pa. Sept. 13, 2012) (Conti, J.) ("When Hagstrom was running the rental counter as the quarterback, contrary to the title, he did not organize and direct the efforts of other employees because he was usually the only employee working at the counter"). Pertinent factors may include the relative importance of various duties, whether (and how much) time is dedicated to allegedly exempt work, whether the employee is

6

free from supervision, and how the employee's salary compares to other employees' salaries. 29 C.F.R. § 541.700(a).

As discussed in more detail below, the uncontroverted facts show that Territory Managers' primary duty, well over fifty percent of their job, involved the performance of manual, low-level, discretion-less, retail sales and merchandising work, which was strictly controlled by PPG management and by Lowe's store managers. It is clear that Territory Managers were at the very "bottom of the totem pole" in PPG Industries' Lowe's Olympic National Field Sales Team organization.

### b. *Territory Managers' "primary duty" did not involve the performance of "office or non-manual work."*

The administrative exemption solely applies to employees whose primary duty is office or non-manual work. To start with, there exists a clear distinction between the "executive exemption" and the "administrative exemption." The regulation defining the "executive" exemption makes absolutely no reference to "office or non-manual work." 29 C.F.R § 541.106. Thus, the performance of manual work, in and of itself, does not destroy the executive exemption. *See*, 29 C.F.R. § 541.106. In contrast, the regulation setting forth the requirements for the "administrative" exemption expressly requires that the primary duty must involve "office or non-manual work." 29 C.F.R. § 541.200. As the *Reeves* court has noted:

Section 541.203 reflects that the exemption is intended for white collar employees who meet the test of the regulations. Nevertheless, section 541.2 does not prohibit completely performance of manual work by an administrative employee. The performance of some manual work which is directly related to the work requiring the exercise of discretion and independent judgment would not cause the exemption to fail. However, if the employee performs so much manual work that he cannot be said basically to be a white-collar employee, he does not qualify for exemption as a bona fide administrative employee even if the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment. *Thus, it is obvious that employees who spend most of their time using tools, instruments, machines, or other equipment,*

7

*or in performing repetitive operations with their hands, no matter how much skill is required would not be bona fide administrative employees within the meaning of § 541.2.*

*Reeves v. International Tel. & Tel. Corp.*, 357 F. Supp. 295, 300 (W.D. La. 1973), aff'd.

616 F. 2d 1342 (5th Cir. 1980), *cert. denied,* 449 U.S. 1077 (1981) (emphasis added); *see also*, *Marshall v. United Video, Inc.*, 1978 U.S. Dist. LEXIS 7033, *8-*9 (D. Okla. 1978). The "white collar" determination is a "threshhold" issue that must first be determined before the court undertakes the "principal value" analysis urged by employer.[4] *Tanner v. Emma Bixby Medical Center*, 1988 U.S. Dist. LEXIS 21127, *11-*12 (E.D. Mich. 1998). In the instant matter, Territory Managers plainly did not do office work: they had no office in any Lowe's store, no desk, chair, computer, email or internet access. Even PPG does not contend that Territory Managers performed "office work." Although Territory Managers performed some office-type work at their residences, the evidence clearly shows that the Territory Managers' primary duty was to service Lowe's stores, which involved the manual tasks set forth in ¶¶ 53-93 of the

---

[4] The *Tanner* court stated:

> Thus, under the express language of § 541.203, the Court must first determine that an employee qualifies for the administrative exemption as a "white-collar" employee, before assessing whether the employee's primary duty involves administrative tasks directly related to management policies or general business operations.

> In the present case, the undisputed evidence reveals that Plaintiff spent the vast majority of his time engaged in non-office, manual work such as shoveling sidewalks, painting, mopping floors, buffing floors, repairing light fixtures, repairing and replacing exit lights, working on heating, venting, and air conditioning, fixing leaky faucets, boiler maintenance, tearing out water damaged ceilings, moving furniture, mowing grass, responding to nurse's work orders in the patient care area, and running errands. Even though this non-office/manual work often required Plaintiff to use discretion and independent judgment, the regulations expressly provide that an employee who does not "basically" perform office/non-manual work does not qualify for the administrative exception "*even if* the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment." While the Court recognizes that Plaintiff also performed administrative tasks, under no reasonable interpretation of the facts could the Court find that Plaintiff was "basically a white-collar employee" as required by § 541.203. Accordingly, the Court finds that Plaintiff was not employed in a bona fide administrative capacity within the meaning of 29 C.F.R. § 541.2, and therefore, Plaintiff is entitled to judgment on the issue of liability as a matter of law.

*Id.* at *14-*16 (Emphasis in original).

Plaintiffs' Concise Statement of Undisputed Material Facts. Similar to *Tanner*, it is undisputed that these manual tasks took a majority of the Territory Managers' time in the store. Pltf.s' Stmt. of Uncontroverted Facts, ¶93. *See Tanner*, 1988 U.S. Dist. LEXIS 21127, at \*11-\*12. For example, it was undisputed that Territory Managers routinely carried product weighing from 10 to 75 pounds, sometimes up and down ladders. *Id.*, ¶¶ 81-83. Moreover, Territory Managers spent most of their time using tools (such as hammers, mallets, crow bars, wrenches, and screwdrivers, etc.), instrument, heavy machinery, or other equipment, or performing repetitive operations with their hands. *Id.*, ¶¶ 78-80. Clearly Territory Managers did a lot more manual labor than simply replenishing a chip rack or occasionally down-stocking product, as PPG will likely to imply. Even PPG's own documents, including its checklist of physical requirements, say that Territory Managers spend 61% to 100% of their day reaching above and below the shoulders, doing repetitive motion, climbing up and down stairs or ladders, and lifting between 1 and 50 lb. Plaintiffs' concise statement of fact, ¶¶83-87. PPG management repeatedly stated that the Territory Manager job had no light duty available for injured employees and was hazardous. *Id.*, ¶¶88-92. Nothing can be said by PPG to contradict its own manuals and management employees. Under no stretch of anyone's imagination could the Plaintiffs here be construed to be "white collar" employees. Rather, the Plaintiffs here are clearly "blue collar" workers, whose workday is dominated by manual work and retail sales, usually in two different Lowe's store per day. Thus, it is—or should be—undisputed that Territory Managers' primary duty was not the performance of office work.

c. ***Territory Managers' "primary duty" does not involve the "management or general business operations of the employer or the employer's customers."***

Only those employees whose "primary duty" is performing work "directly related to the management or general business operations" of the employer or the employer's customers will

9

qualify for the administrative exemption. 29 C.F.R. § 541.201. The regulation describes the term

"directly related to management or general business operations" as follows:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, *as distinguished, for example, from* working on a manufacturing production line or *selling a product in a retail or service establishment.*

> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(Emphasis added).

Here, PPG required the Territory Managers to perform work each day in the Lowe's

stores to which they were assigned. Their work involved the same routine duties performed by

non-exempt Lowe's employees who worked in the paint department: Down-stocking shelves and

interacting with Lowe's customers by assisting Lowe's customers, mixing paint and making

IMPACT sales. PPG directed its Territory Managers to spend at least 25% of their time trying to

help Lowe's compete with Home Depot by making retail sales, on behalf of Lowe's, to

contractors. The manual task of down-stocking was important because "Lowe's can't sell air."

In the instant case, PPG "committed" to share its employees—the Territory Managers—

with Lowe's because of the strategic alliance and partnership between the two corporations.[5]

---

[5] In the instant case, although Territory Managers were directly employed by PPG, they were expected to work in their Lowe's stores a requisite number of hours each day, and their activities while in the Lowe's store were controlled by PPG and Lowe's. They had to get permission to vary from the planograms, to place stack-out displays and to obtain additional end-cap displays. They were required to report to the Lowe's store manager or paint department manager. And, ultimately, a Lowe's store manager could prohibit a Territory Manager from coming into his store. Territory Managers were required to work the Lowe's department paint desk, to make retail sales to Lowe's customers and to interact with Lowe's customers on Lowe's behalf, under the direction and approval of Lowe's managers. Territory Managers were under the direction of Lowe's management while in the Lowe's stores. Territory Managers were required to Log-in and Log-out on a Lowe's timekeeping system. Territory Managers were required to get a Lowe's manager's approval on their daily Call Reports. Territory Managers were required to satisfy Lowe's Managers' requests within their ability. Accordingly, even if the Plaintiffs did not join Lowe's in this current action, Lowe's was a "joint employer" under the FLSA:

(a) *A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer.* A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. *On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.* In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.

(b) *Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:*

*(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees*; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) *Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.*

29 C.F.R. § 791.2 (Emphasis added).

11

Territory Managers are different from the common factory sales representative, who deals only with its customer—the retailer. Here, the Territory Managers step into the shoes of a retail sales person for Lowe's. PPG is liable for the time Territory Managers spent selling to Lowe's customers in a retail sales environment. Hence, according to 29 C.F.R. §§ 541.201, Territory Managers are distinguishable from employees whose primary duty involves work "directly related to management or general business operations" because they are selling a product in a retail or service establishment. *See Martin v. Cooper Elec. Supp. Co.,* 940 F.2d 896, 906 (3d Cir. 1991) (holding that inside salespersons do not perform work of substantial importance to the management or operation of the employer's business). PPG cannot establish that the Territory Managers did office or non-manual work, nor could it establish that their work directly related to management policies or general business operations.

### d. *Territory Managers' "primary duty" did not include the exercise of "discretion and independent judgment with respect to matters of significance".*

An exempt employee's primary duty of office or non-manual work directly related to management policies or general business operations must also require his exercise of discretion and independent judgment.[6] 69 Fed. Reg. 22122, 22142. In order to qualify as "administrative" personnel within the exemption, the employee must exercise discretion of more than the small discretions that normally inhere in the type of work which the employee does. *Rothman v. Publicker Industries, Inc.,* 201 F. 2d 618, 620 (3d Cir. 1953); *Hodgson v. Penn Packing Co.,* 335 F. Supp. 1015, 1021 (E.D. Pa. 1971).

---

[6] The pre-2004 regulations stated that the employee must "customarily and regularly" exercise discretion and independent judgment. However, the omission of that language in the current regulation does not represent a change in the law. *See "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, etc., Employees,"* 69 Fed. Reg. 22122, 22142-22143 (2004).

"Independent judgment" means the employee has authority to make a choice or decision free from immediate direction or supervision. . . ." 29 C.F.R. § 541.202(c). Relevant factors include (a) whether the employee carries out major assignments in operating the business, (b) whether the employee may commit the employer on matters of significance, (c) whether the employee may deviate from established policies and procedures without prior approval, and (d) whether the employee provides consultation or expert advice to management.[7] 29 C.F.R. § 541.202(a). The regulation clearly states that the exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. 29 C.F.R. § 541.202, *see also* § 541.704 regarding use of manuals. The exercise of discretion and independent judgment does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work.[8] 29 C.F.R. § 541.202(e). Accordingly, the fact that an employee exercises "initiative and imagination" does not establish, in itself, that the employee

---

[7] In determining whether an employee "exercises discretion and independent judgment with respect to matters of significance," relevant factors include (but are not limited to) whether the employee

- Carries out major assignments in conducting the operations of the business;
- Performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;
- Has authority to formulate, affect, interpret or implement management policies or operating practices; or to waive or deviate from established policies and procedures without prior approval; or to commit the employer in matter that have significant financial impact;
- Provides consultation or expert advice to management;
- Is involved in planning long- or short-term business objectives;
- Investigates and resolves matters of significance on behalf of the management; and
- Represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

[8] The regulations give examples of the types of employees whose duties generally meet the requirements of the administrative exemption: Insurance claims adjusters, employees in the financial services industry; an executive assistant or administrative assistant to a business owner; human resources managers who formulate, interpret or implement policies; purchasing agents with the power to bind the company on significant purchases. 29 C.F.R. § 541.203.

13

exercised the discretion necessary to establish and exception to the FLSA.[9] *Bishop v. Rockwell Space Operations Co.*, 867 F. Supp. 1287, 1299, n. 7, (S.D. Tex. 1994) ("[N]othing in § 541.301, *et seq.*, suggests that 'initiative and imagination' have anything to do with 'discretion.'").

Because PPG can establish neither prior requirement (office or non-manual work nor directly related), the Court need not to address this element. Even if the Court does so, the record clearly shows that Territory Managers did not perform the type of work contemplated by the administrative exemption because:

(a)     Territory Managers had no authority to formulate, affect, interpret or implement PPG's management policies or PPG's operation practices.

(b)     Territory Managers were not involved in long term planning of PPG's objectives.

(c)     Territory Managers did not carry out major assignments in conducting the PPG's business operations.

(d)     Territory Managers did not have authority to commit PPG in matters that had a significant financial impact.

(e)     Territory Managers did not have any authority to negotiate and bind PPG on any significant matters.

---

[9] In *Jirak v. Abbott Laboritories, Inc.*, 716 F. Supp. 2d 740, 749-50 (N.D. Ill. 2010), the court succinctly summarized the third prong of the administrative exemption as follows:

[T]he regulations explain that, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* The exercise of discretion and independent judgment requires "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* at § 541.202(e). The employee must have "authority to make an independent choice, free from immediate direction or supervision." *Id.* at § 541.202(c). Further, an employee does not meet the requirement "merely because the employer will experience financial losses if the employee fails to perform the job properly." *Id.* at § 541.202(f).

"The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the questions arises." *Id.* at § 541.202(b). The regulations, however, provide factors to consider when determining whether an employee's duties meet this threshold. *Id.* These factors include, but are not limited to, whether the employee "carries out major assignments in conducting the operations of the business"; "has authority to commit the employer in matters that have significant financial impact"; has authority to waive or deviate from established policies and procedures without prior approval"; and "has authority to negotiate and bind the company on significant matters." *Id.*

*See also, In re Novartis Wage & Hour Litigation*, 155 F.3d 141, 155-57 (2d Cir. 2010) (Discussion of the administrative employee exemption). Accordingly in *Jirak*, because the court found that the sales representatives did not exercise discretion and independent judgment, it did not need to address whether the plaintiffs performed work "directly related" to the defendant's management or business operations. *See Jirak*, 716 F. Supp. 2d at 749-50.

      (f)     Territory Managers did not have any authority to waive or deviate from PPG's established policies without prior approval.

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010), the court found the administrative exemption did not apply to pharmaceutical sales representatives ("reps") who went to doctors' offices to talk about various drugs. *Id.*, at 144-146. The undisputed facts in *Novartis* were that the reps (1) had to adhere to Novartis' "core messages," but not participate in marketing strategy; (2) had to visit a given doctor and promote a given drug a certain number of times per trimester; (3) had to hold promotional events; (4) had to answer questions only as scripted. *Id.* at 157.

Similarly here, Territory Managers exercised no discretion or independent judgment on matters of significance. The undisputed facts show that Territory Managers had no role in planning PPG's marketing or formulating PPG's core messages, or any control over pricing, promotions or advertising. Pltf.s' Stmt. of Uncontroverted Facts, ¶¶105-113. Similarly to the plaintiffs in *Novartis*, Territory Managers could not deviate from PPG or Lowe's policies without permission. *Id.*, ¶¶142-43, 146-50. PPG required Territory Managers to visit each store a certain number of times per month and to sell a certain amount of paint. *Id.*, ¶¶ 145-47. For example, it is uncontroverted that Defendant continuously communicated instructions and requirements to Plaintiffs via the *Torch,* email, telephone communications, face-to-face meetings with Regional Managers and sales meetings. *Id.*, ¶¶120, 137. It is undisputed that Territory Managers could not deviate from policy or add promotional displays without approval from a Lowe's store manager. *Id.*, ¶¶ 142-43, 146-50. It is uncontroverted that Plaintiffs were

disciplined for not properly performing their in-store tasks. Plaintiffs' concise statement of fact, ¶¶ 144, 149-152. Territory Managers were never free from supervision.[10]

The only discretion and independent judgment Plaintiffs had was in allocating their time, approaching Lowe's managers and contractors, and deciding when and where to train the Lowe's associates on Olympic products. Pltf.s' Stmt. of Uncontroverted Facts, ¶¶ 155-57. But as in *Norvatis*, PPG's controls dictated the outcomes. 611 F.3d at 157. For example, in terms of conducting the training, any formal training conducted by Territory Managers for the benefit of Lowe's employees was developed and directed by Lowe's and PPG. Pltf.s' Stmt. of Uncontroverted Facts, ¶¶50(e), 96, 134. The syllabus was provided to the Plaintiffs and they were instructed to keep to the script. Similarly, the paint and stain layout in a Lowe's store was developed by PPG or Lowe's. *Id.*, ¶¶41-44, 47-48, 70-71, 149. Any variations or any "creative" ideas were subject to the absolute discretion of the Regional Managers or the Lowe's store management and had to be approved.[11] *Id.*, ¶¶76, 142-43, 159. Even when tasked to help resolve a customer complaint about a product, Plaintiffs were constrained by set policies and procedures established by Lowe's and PPG in the resolution of those complaints. Plaintiffs had no discretion in that regard. Refunds were a Lowe's issue. Although Territory Managers have some discretion in allocating their time inside a Lowe's store, they were required to visit two stores per day for four hours each. *Id.*, ¶¶50, 125. Territory Managers were required to clock in and clock out of

---

[10] It is uncontroverted that Plaintiffs were subject to Lowe's supervision while in the Lowe's stores as well. The Plaintiffs are responsible adults. They were expected to follow the instructions given. To suggest that they were not closely supervised because they did not have physical, face-to-face contact with a PPG supervisor on a daily basis belies the employment conditions under which Plaintiffs worked.

[11] Any "strategies" Territory Managers were expected to come up with to improve the sales numbers within their stores were severely constrained by the Lowe's store Planograms, approved end-caps, and Lowe's store management. While developing a good relationship with Lowe's management was expected, in order to secure Lowe's management's approval of some occasional extra end-caps or to secure some stack-outs, the "good relationship" was developed by Territory Managers doing their job properly and not by other means employed by sales representatives or lobbyists, i.e., schmoozing, entertainment, dinners, sporting events and the like.

16

each Lowe's store, complete a punch list at each store and to have a Lowe's managers sign-off on it. *Id.*, ¶¶50, 126-27. It cannot be genuinely disputed by PPG that the primary duty of Territory Managers did not involve the exercise of discretion or independent judgment.

### e. *Territory Managers' "primary duty" is performing manual labor, not promoting sales*

PPG is likely to argue that Territory Manager's primary duty is to promote sales rather than perform manual labor.[12] PPG is likely to claim that the amount of time Territory Managers spent at work is irrelevant. However, as the DOL has made clear, the administrative exemption applies only to employees who perform work directly related to assisting with the running or servicing of the business, "as distinguished, for example, from working on a manufacturing production line or *selling a product in a retail or service establishment*." 29 C.F.R. § 541.201(a) (emphasis added). Therefore, the administrative exemption applies only to employees engaged in "'running the business itself or determining its overall course of policies,' not just a day-to-day carrying out of the business' affairs." *Bothell, v. Phase Metrics, Inc.*, 299 3d. 1120, 1125 (9th Cir. 2002); *accord Bratt v. Cnty of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 2000). The distinction is "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself." *Bothell*, 299 3d. at 1127 (emphasis added; internal quotations omitted); *see also Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990); *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 694 (4th Cir. 2009) ("Although the administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context, it is still a useful construct"). Business

---

[12] In any event, such contention was apparently a litigation strategy, rather than the truth, developed in defense to this action and other actions filed as stated in footnote #3 of Plaintiffs' Statement of Fact. Sherry Calhoun testified on behalf of PPG in her Rule 30(b)(6) deposition that when discussing "retail sales" with their attorney in "probably 2010" (after this action and other similar actions were filed) "we" determined that "promoting sales is a territory manager's primary duty." PPG Depo., Vol. II, P. 214, L. 8 – P. 216, L. 23. After she realized the implication of what she had just testified to, she claimed that she misunderstood the question. PPG Depo., Vol. II, P. 216, L. 24 – P. 220, L. 7.

administrative operations include "advising the management, planning, negotiation, representing the company, purchasing, promoting sales, and business research and control." 69 Fed. Reg. 22122, 22138 (April 24, 2004). "Promoting sales" means "marketing activity aimed at promoting (i.e., increasing, developing, facilitating and/or maintaining) customer sales *generally*." *Martin v. Cooper Elec. Supply Co.*, 940 2d. 896, 905 (3d Cir. 1991); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 106-07 (2d. 2010). It does not include activities necessary to closing specific sales. *Martin*, 940 2d. at 905. Otherwise, "any sales clerk in a retail store would 'promote sales' when assisting potential customers." *Reiseck*, 591 F.3d at 106-07.

In the instant matter, the record clearly establishes that the Territory Managers took no role in negotiating PPG's comprehensive agreement with Lowe's. Nor did Territory Managers advise or consult on formulating or implementing management policies and general business operations for PPG or Lowe's. Instead, Territory Managers were required to physically work in the Lowe's stores, performing manual tasks to service the store, while dealing directly with, and making sales directly to, Lowe's customers.[13] PPG clearly required Territory Managers to work in the Lowe's stores to which they were assigned two stores per day, four hours in each store and each store at least weekly. Pltf.s' Stmt. of Uncontoverted Facts, ¶¶50, 125. The only selling-related duties Territory Managers performed were training Lowe's personnel, making retail sales to customers, placing product as directed by Lowe's and PPG, and talking to and assisting customers. *Id.*, ¶¶49, 94, 98, 103-04. Territory Managers did not "promote sales" for PPG or Lowe's generally, rather, they handled retail sales, which are not administrative duties. *See Martin*, 940 F.2d at 905; *Reiseck*, 591 F.3d at 106-07. It is important to note that PPG

---

[13] For example, not only were Territory Managers were required to make "in-aisle" sales to "do it yourself" customers and mix paint for them, but they were also required to spend 25% of their time in the Lowe's store trying to make paint and stain sales to commercial contractors – Lowe's customers.

specifically instructed Territory Managers to make "in-aisle" sales to Lowe's customers, mix paint for customers (even if it was not Olympic product), and to make IMPACT sales of accessory paint items (brushes, rollers, tape, thinner, scrappers, buckets, pans, drop clothes, etc.) to increase the revenue to Lowe's due to PPG and Lowe's strategic partnership. Pltf.s' Stmt. of Uncontoverted Facts¶¶5-7. Since Territory Managers were required to work in the Lowe's stores, dealing with and making sales to Lowe's customers, in the context of a retail or service establishment, that sales work is not administrative, pursuant to 29 C.F.R. § 541.205(a), which expressly excludes retail sales from the administrative exemption.[14] *See Martin*, 940 F.2d at 903-04, *Reich v. John Alden Life Ins. Co.*, 126 F. 3d 1, 10, n.6 (1st Cir. 1997). Thus, PPG cannot establish that Territory Managers "promoted sales" in a manner that is legally relevant, as compared to retail merchandising.

The promotion of sales and performance of manual labor are not mutually exclusive. While an exempt employee may perform some manual labor, if the employee performs so much manual work that he cannot be said to be basically a white-collar employee, he does not qualify for the administrative exception. This Court has cautioned so in *Hickton v. Enter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.)* as follows:

> To the extent ERAC-New York points to specific administrative job duties performed by Hagstrom, many of those duties were nonexempt. For example, ERAC-New York argues that Hagstrom's marketing and sales calls to customers and prospective customers were administrative tasks relating to marketing. For a variety of reasons, the court is not persuaded that such actions, even if they were Hagstrom's primary duty, would qualify as administrative under the regulations.

---

[14] It is irrelevant that Territory Managers did not actually accept the consideration for the sales they made, rather, the consideration was accepted by the cashier. Such concept is consistent with modern grocery stores, hardware stores, lumber yards, department stores, and other big-box stores, where the sales personnel on the floor assist customers in selecting products, but may not conduct the final transactions. Although the final transactions took place at the cashier, it is logical and could not be disputed that those sales personnel engaged in retail sales by helping customers in making their product selections. Accordingly, it cannot be disputed that Territory Managers engaged in retail sales because they helped the Lowe's customers select the paint and stain, mix the requested color tint, and assisted the Lowe's customers with other associated items necessary for the customers' project, even though the final steps in the sales transaction is consummated by the cashier.

> Making sales calls and salesmanship (which are distinct from marketing) are not
> listed as examples of exempt areas of work in § 541.201(b). Inside sales are
> production tasks, and the regulations provide a separate exemption for outside
> sales employees, which ERAC-New York did not raise as a distinct defense in
> this motion for summary judgment (but only as a component of the combination
> exemption).

*Hickton v. Enter. Rent-A-Car Co. (In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.)*, 09-cv-1188; 2012 U.S. Dist. LEXIS 130694, 80-81 (W.D. Pa. Sept. 13, 2012) (Conti, J.).

Similarly, Territory Managers promoted the Olympic brand while performing manual labor and talking to Lowe's associates and customers. Promoting the sales of Olympic products was the mission or objective of the entire PPG Olympic sales team. However, Territory Managers' primary duty was to service the Lowe's stores to which they were assigned by performing the tasks required, which mainly includes performing the manual labor work.[15] Therefore, an increase in sales of Olympic products and maintenance of a good relationship with Lowe's were intended and expected results of Territory Managers performing their primary in-store duties. While Territory Managers may have aimed to "build relationships" so they could gain stackouts, end caps, and other displays, or to train Lowe's associates to gain more exposure in the stores for Olympic products, this merely shows their ability to parrot PPG's sales strategies. Even if Territory Managers were of critical importance to PPG's initiative to promote

---

[15] The distinction between the mission and the primary duty can be exemplified by some extreme examples. For example, the *mission* of the NATO Armed Forces in Afghanistan, which includes U.S. Armed Forces, is to *promote* a safe and secure environment for the establishment and development of a functioning post-Taliban government and to train the Afghan military. The *primary duty* of the soldiers, sailors, airmen and marines, however, is to perform their individual jobs, engaging in combat operations, patrolling, clearing IEDs, treating injuries, or performing whatever their individual jobs require. Likewise, to contend that Plaintiffs' "primary duty" is to "promote sales" is like saying that a West Texas oil rig worker's primary duty is the promotion of domestic oil production. Plaintiffs' primary duty requires a fact- sensitive inquiry of the work they actually perform. Each case is "intensely factbound and case specific." *Dalheim v. KDFW TV*, 918 F. 2d 1220, 1226 (5th Cir. 1990). Each case must be judged on its own peculiar facts. *Id.* at 1227. Plaintiffs' duties are clearly set forth in Pltf.s' Stmt. of Uncontoverted Facts, ¶¶ 49-157.

Olympic sales, such importance does not qualify the Territory Managers for the administrative exemption. *See Desmond*, 564 3d. at 694.

In conclusion, PPG cannot establish that Territory Managers' primary duty was office or non-manual work directly related to management or general business operations and requiring the exercise of discretion and independent judgment. Plaintiffs have produced affirmative evidence clearly negating two essential elements of PPG's claimed administrative exemption. Plaintiffs have also clearly established that PPG does not have enough evidence to carry its burden of persuasion at trial. PPG cannot present any facts showing that Territory Managers were primarily performing office or non-manual work, or even if it could so, PPG could not establish that the Territory Managers were involved in forming management policies, running business operations, or promoting sales on a general level. Because Plaintiffs have been misclassified as exempt under the FLSA, they have uniformly been denied payment, including overtime, whenever they worked in excess of forty hours a week—a routine phenomenon in light of the demands PPG puts upon the Territory Managers. *See* Affidavits of Plaintiffs Seymour (¶¶ 29, 42-43); Musa (¶¶ 29, 42-43); Hudson (¶¶ 29, 42-43); Blackburn (¶¶ 28, 41-42); Borichevsky (¶¶ 12, 19-20); Briggs (¶¶ 12, 19-20); Brohaugh (¶¶ 12, 19-20); Evermon (¶¶ 12, 31, 43-44); Flynn (¶¶ 29, 38-39); Miranda (¶¶ 12, 19-20); Reynolds (¶¶ 12, 19-20); and Tolley (¶¶ 12, 19-20). *See also* Declarations and Consents of Opt-In Plaintiffs Barber, Brillhart, Carlson, Diaz, Fusilli, Knoll, McMahon, Prussia, Shafer and Wilkes. Since PPG cannot meet its burden of proving that the Territory Managers "fit plainly and unmistakenly" within the terms of the claimed "administrative exemption," plaintiffs are entitled to summary judgment as a matter of law.

## IV.   PPG SHOULD BE PRECLUDED FROM ASSERTING THE FLSA'S ADMINISTRATIVE EXEMPTION.

In deciding PPG's earlier Motion to Dismiss for lack of subject matter jurisdiction, the Court rejected Plaintiffs' argument that *Fiore v. PPG Industries, Inc.*, 279 P.3d 972 (Wash. Ct. App. 2012), a related misclassification case by another PPG/Olympic Lowe's Team Territory Manger, should be preclusive on the question of whether Plaintiffs' damages should be calculated according to the statutory "time and a half" method or some "half-time" formula. (ECF Doc. 170 at 13-20). In doing so, the Court focused on differences between the calculation of an employee's regular rate under the FLSA and the Washington Minimum Wage Act (hereinafter "WMWA"), under which *Fiore* was decided. Plaintiffs respectfully argue that the question of whether PPG is entitled to assert the FLSA's administrative exemption is distinguishable from the Court's analysis on the damages issue and that they are thus entitled to exercise *Fiore*'s collateral estoppel effect on this narrow issue of exemption.[16]

In declining to accept Plaintiffs' collateral estoppel argument with respect to the calculation of damages, the Court focused on how the *Fiore* Court had explicitly distinguished between the WMWA and the FLSA in terms of their calculations of an employee's regular rate. (ECF Doc. 170 at 18-19). The cases cited in this Court's earlier opinion noting the differences between the FLSA and WMWA similarly focused on regular rate calculations. *See Hisle v. Todd Pacific Shipyards Corp.*, 93 P.3d 108, 118 (Wash. 2004).

By contrast, the FLSA's and WMWA's exemption provisions are substantively identical. *See* 29 USCS § 213(a)(1); Rev. Code Wash. (ARCW) § 49.46.010(3)(c). The *Fiore* Court relied heavily on federal cases (including Third Circuit cases) interpreting the FLSA to hold that Territory Mangers are not subject to the FLSA's administrative exemption because they do not

---

[16] Plaintiffs incorporate by reference their extensive discussion of the legal standard for collateral estoppel and PPG's prior admissions that this case and *Fiore* turn on the "same law," despite any distinction between the FLSA and the WMWA. (ECF Doc. 156, pp. 38-59).

"promote sales" within the FLSA's definition. *Fiore* at 980-982 (citing *Martin v. Cooper Electric Supply Co.*, 940 F. 2d 896 (3d. Cir. 1991)[17]). The *Fiore* Panel adopted the Third Circuit's *Martin* holding that the administrative exemption does not apply to employees who engage merely "in routine selling efforts focused simply on particular sales transactions." *Fiore*, at 981 (quoting *Martin* at 905). The *Fiore* Panel further adopted *Martin*'s holding that "Promoting sales, for the purposes of the administrative employee exemption, consists of marketing activity aimed at promoting (i.e. increasing, developing, facilitating, and/or maintaining) customer sales *generally.*" *Id.* (quoting *Martin* at 981, emphasis original, internal quotations omitted).

Additionally, the *Fiore* Panel ruled that Territory Managers did not "exercise discretion and independent judgment" as required in order qualify for the administrative exemption. *Fiore*, at 982 (relying upon *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 156-57 (2d Cir. 2010)). In particular, the Panel relied upon PPG's admissions[18] that Territory managers did not develop the company's promotional messaging and were not permitted to vary promotional materials, that Territory Managers do not have the authority to formulate policy or operating procedures, or have the authority to negotiate on behalf of or bind PPG on significant matters. *Id.* Relying on *Novartis*, the Panel found that "[t]hese admitted facts clearly demonstrate that Territory Managers do not 'exercise discretion and independent judgment' as required to meet the administrative employee exemption..." *Id.* Because PPG's admissions were made as part of a

---

[17] *Also citing Reich v. John Alden Life Ins. Co.*, 126 F. 3d 1, 3 (1st Cir. 1997); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F. 3d 101 (2d Cir. 2010); *Kuzinski v. Schering Corp.*, 801 F. Supp. 2d 20 (D. Conn. 2011); *Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200 (S.D.N.Y. 2011).

[18] PPG made these admissions, detailed more fully in Plaintiffs' Statement of Material Undisputed Fact, in Sherry Calhoun's F.R.C.P. 30(b)(6) deposition. Because *Fiore* and the *Seymour* litigation were consolidated with two other wage and hour actions by territory managers for the purposes of discovery, Ms. Calhoun gave one Rule 30(b)(6) deposition for the purposes of all four cases. Thus, this Court finds itself analyzing essentially the same factual record, in relevant part, as the *Fiore* Panel.

F.R.C.P. 30(b)(6) deposition about PPG's policies and practices respecting all Territory Managers and not just Mr. Fiore, there is no colorable argument – as this Court found with respect to the damages calculation question – that there might be some relevant factual difference between Mr. Fiore and the *Seymour* Plaintiffs that would undermine the preclusive effect[19] of the *Fiore* decision with respect to this narrow issue.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully submit that they are entitled to summary judgment as a matter of law that the Territory Managers were misclassified as exempt and therefore, are entitled to overtime payment.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

Date: November __, 2012    *s/ Bruce C. Fox*
Bruce C. Fox, Esquire
Pa. I.D. No. 42576
*bruce.fox@obermayer.com*
Yuanyou Yang, Esquire
*sunny.yang@obermayer.com*
Andrew Horowitz, Esquire
*andrew.horowitz@obermayer.com*
BNY Mellon Center, Suite 5240
500 Grant Street
Pittsburgh, PA 15219
412-566-1500
Fax: 412-566-1508

*Counsel for Plaintiffs*

---

[19] Even if this Court does not find that *Fiore* is preclusive on the question of Plaintiffs' exemption from the overtime provisions of the FLSA, Plaintiffs insist that *Fiore*'s analysis is highly persuasive given the Panel's exhaustive analysis of the exact facts currently before the Court.

## CERTIFICATE OF SERVICE

I hereby certify that I have, on the date listed below, caused a true and correct copy of the foregoing *Plaintiffs' Motion for Partial Judgment on Exemption* to be electronically filed with the United States District Court for the Western District of Pennsylvania. Notice of this filing will be sent by operation of the Court's Electronic Filing System to counsel of record.

Date: November, 20 2012

*s/Bruce C. Fox*
Bruce C. Fox, Esquire